**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GLADSTONE TECHNOLOGY,** | : | |
| **PARTNERS, LLC** | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 15-3528** |
| | : | |
| **OWEN DAHL,** | : | |
| | : | |
| **OWEN DAHL** | : | |
| v. | : | **CIVIL ACTION NO. 15-4252** |
| | : | |
| **GLADSTONE TECHNOLOGY** | : | **(Case Consolidated with 15-3528)** |
| **PARTNERS, LLC,** *et. al.* | : | |

## MEMORANDUM OPINION

**RUFE, J.**                                                                                 **AUGUST 25, 2016**

Plaintiff Owen Dahl brings this diversity action against Defendants Gladstone

Technology Partners, LLC; Gladstone Associates, LLC; Daniel Kreuter, Chairman of Gladstone

Technology and Gladstone Associates; and Paul Lally, Chief Executive Officer of Gladstone

Technology and President of Gladstone Associates.[1] In his Amended Complaint, Dahl asserts

claims for, *inter alia*, violations of Washington state law, breach of contract, and conversion.

Defendants have filed a motion to dismiss the Amended Complaint.  Dahl opposes the motion.

For the following reasons, Defendants' motion will be granted in part, and denied in part.

## I.     FACTUAL ALLEGATIONS[2]

On or around November 1, 2012, Plaintiff Owen Dahl, a Washington state resident,

contracted with Defendant Gladstone Technology, LLC (d/b/a Gladstone Analytics), a

---

[1] Dahl's Amended Complaint asserts claims against Gladstone Technology, LLC; Gladstone Associates, the 70% majority shareholder of Gladstone Technology, LLC; Daniel Kreuter, the Chairman of Gladstone Technology, LLC; and Paul Lally, the Chief Executive Officer of Gladstone Technology and President of Gladstone Associates. Gladstone has filed a separate action against Dahl, and the two cases have been consolidated.

[2] For the purposes of the motion to dismiss, the factual allegations in the Amended Complaint are presumed to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 589 (2007).

Pennsylvania limited liability company in the business of developing computer software to be used in the financial services industry.  Under the terms of the parties' service agreement, Dahl, a valuation expert, was to oversee the development and commercial release of a product called Gladstone Evaluation Index Software.  In exchange, Gladstone Technology Partners promised him a 30% share of ownership in Gladstone.[3]  The agreement further intimated that Dahl was not a Gladstone employee, but an independent contractor, and no additional compensation was negotiated into the agreement.[4] However, Dahl's Amended Complaint alleges that he was paid a minimal salary from October 2014 to April 2015.[5]

The service agreement includes a choice of law and a choice of venue provision.  The choice of law provision states that the agreement "shall be construed by the law of Pennsylvania for all purposes of conflicts of law."[6] The venue provision provides that any disputes "shall be heard" in either the Pennsylvania Courts of Common Pleas or the U.S. District Court for the Eastern District of Pennsylvania.

Dahl contends that Gladstone never issued the 30% share of stock as promised in the agreement and paid him "no salary" for his work between November 2012 and September 2014.[7]

---

[3] The service agreement states: "As compensation for the services to be rendered by Dahl hereunder, Dahl shall receive limited member units in Company (the "Units") equaling approximately thirty (30%) percent of all the outstanding Units in the Company." *See* Ex. A to Pl's Compl.

[4] Dahl attached the parties' service agreement to his Amended Complaint. The Court can consider this document on a motion to dismiss pursuant to *Guidotti v. Legal Helpers Debt Resolution*, *L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013).

[5] Compl. at ¶ 1.

[6] Gladstone disputes Dahl's ability to assert statutory and public policy claims under Washington law. However, the Court finds that the choice of law provision applies only to issues of contract interpretation, and not to all disputes between the parties. Accordingly, Dahl's Washington claims are not precluded by the provision, and the Court need not engage in a choice of law analysis that would require it to weigh Pennsylvania's interest in the case against Washington's interest. *See DeLage Landen Fin Servs., Inc., v. Rasa Floors*, LP, No. 09-00533, 2009 WL 564627 at *11 n. 12 (E.D. Pa. 2009).

[7] Compl. at ¶ 1.

Instead, Dahl alleges that Gladstone sent him I.R.S. form K-1 ("Partner's Share of Income, Deductions, Credits, etc.") in January of 2015.  The K-1 allegedly lists $240,000 as Dahl's share of income from Gladstone Technology.  According to Dahl, this figure represents only a 22.5% share of stock.  For this reason, Dahl asserts that he complained to both Defendant Kreuter, the Chairman of Gladstone Technology, and Defendant Lally, the Chief Executive Officer of Gladstone Technology, that he had not been paid his full 30% share.  Dahl also alleges that he demanded inspection of Gladstone Technology's books and records, which Gladstone refused.  Gladstone also offered no explanation of its failure to issue the full 30% share of stock.

On May 28, 2015, Defendant Kreuter, in his capacity as Chairman of Gladstone Technology, LLC, notified Dahl by letter (The Termination Letter) that his employment with Gladstone was being "terminated for cause."[8] The Termination Letter also stated that, pursuant to the terms of the service agreement, the units of membership interest in the company previously issued to Dahl were forfeited back to the Company.[9]

On June 10, 2015, Dahl filed suit against Gladstone in the U.S. District Court for the Western District of Washington.  On June 23, 2015, Gladstone Technology filed its own suit against Dahl in the Eastern District of Pennsylvania asserting claims for, *inter alia*, breach of contract, breach of fiduciary duty, and unfair competition.  Gladstone also filed a motion in Washington federal court to transfer Dahl's lawsuit to the U.S. District Court for the Eastern District of Pennsylvania, which was granted without opposition.  When Dahl's case was transferred to this District, it was consolidated, by stipulation, with Gladstone's case.[10] On September 18, 2015, Dahl then filed an Amended Complaint that asserts nine causes of action: 1)

---

[8] Ex. B to Pl's Compl.

[9] Compl. at ¶ 54.

[10] Case No. 15-4252, Order Doc. No. 9.

violation of Washington state wage law, RCW §§ 49.48 and 49.52; 2) violation of

Pennsylvania's Wage Payment and Collection Law, 43 P.S. § 260.3; 3) breach of contract; 4)

wrongful termination in violation of Washington public policy; 5) conversion; 6) tortious

interference with contract; 7) shareholder oppression and petition for judicial dissolution; 8)

injunction; and 9) declaratory relief.  Gladstone has filed a motion to dismiss the Amended

Complaint, asserting that Dahl was terminated for cause due to poor work performance.

Additionally, Gladstone contends that Dahl fails to state a claim for relief because the allegations

in his Amended Complaint contradict his own attached exhibits, lack adequate factual support,

and fail to give fair notice of the claims asserted.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure

to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain

statement" lacks enough substance to show that he is entitled to relief.[11]  In determining whether

a motion to dismiss should be granted, the court must consider only those facts alleged in the

complaint, accepting the allegations as true and drawing all logical inferences in favor of the

non-moving party.[12]  Courts are not, however, bound to accept as true legal conclusions couched

as factual allegations.[13]  Something more than a mere *possibility* of a claim must be alleged;

rather plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[14]

The complaint must set forth "direct or inferential allegations respecting all the material elements

---

[11] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

[12] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Fay v. Muhlenberg Coll.*, No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[13] *Twombly*, 550 U.S. at 555, 564.

[14] *Id.* at 570.

necessary to sustain recovery under *some* viable legal theory."[15]  The court has no duty to

"conjure up unpleaded facts that might turn a frivolous . . . action into a substantial one."[16]  Legal

questions that depend upon a developed factual record are not properly the subject of a motion to

dismiss.[17]

## III.   DISCUSSION

### A.   Count I: Violations of RCW §§ 49.48 and 49.52

Dahl's first cause of action arises under Washington state's wage law, Revised Code of

Washington (RCW) §§ 49.48 .010 and 49.52.050.  RCW § 49.48.010 prohibits an employer from

withholding or diverting any portion of an employee's wage.[18] RCW § 49.52.050 prohibits an

employer from acting "willfully and with intent" to deprive the employee of any portion of his

wage by paying the employee a lower wage than the employer is obligated to pay under "any

statute, ordinance, or contract."[19]  This cause of action, as presented in Dahl's Amended

Complaint, is sufficiently pled because it meets the notice pleading standard set forth by Federal

Rule of Procedure 8.[20]

Under Rule 8, courts have resolved that a sufficiently plead complaint need not articulate

"specific facts."[21]  However, it must at a minimum provide each defendant "fair notice of what

the claim is and the grounds upon which it rests.[22]

---

[15] *Id.* at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1984)) (internal quotation marks omitted).

[16] *Id.* (quoting *McGregor v. Indus. Excess Landfill, Inc.,* 856 F.2d 39, 42-43 (6th Cir. 1988)).

[17] *See, e.g., TriState HVAC Equip., LLP v. Big Belly Solar, Inc.,* 836 F. Supp. 2d 274 (E.D. Pa. 2011).

[18] R.C.W. § 49.48.010.

[19] R.C.W. § 49.52.050.

[20] Fed R. Civ. P. 8.

[21] *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

Here, Dahl alleges that Defendants Gladstone Technology, Gladstone Associates, Daniel Kreuter, and Paul Lally ("the Gladstone Defendants") collectively withheld or diverted a portion of his wages.  He also alleges that the Gladstone Defendants acted willfully and with intent to deprive him of his wages by paying him a "lower wage" than they were obligated to under the service agreement.  Accordingly, all four Gladstone Defendants were provided "fair notice" of Dahl's wage claim under Washington law.

Dahl, however, does not allege that Defendants Lally and Kreuter, who are alleged to be partners in Gladstone, assumed personal liability for Gladstone.[23]  Pursuant to Pennsylvania's Limited Liability Law ("LLC Law") company members are not liable for the torts or contracts of their LLC unless they ***specifically agree*** to assume such liability.[24] Assumption of liability occurs when an individual LLC member "executes a contract in his own name or voluntarily undertakes a personal responsibility."[25]  Nevertheless, whether Lally and Kreuter assumed personal liability for Gladstone can be determined through discovery.  The Court may revisit this issue on summary judgment.  For this reason, the claim is sufficient for purposes of this motion.

B.  Count II: Violation of 43 P.S. § 260.3

Dahl's second cause of action asserts a violation of Pennsylvania's Wage Payment and Collection Law, 43 P.S. § 260.3.  That law provides that:

---

[22] *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted).

[23] Dahl's Amended Complaint asserts that "Defendants are and at all times relevant were, each other's partners, joint venturers, alter egos, successors, assigns, and fraudulent transferees, and Dahl's joint employers." *See* Compl. at ¶ 11.

[24] *In re Witmer*, 541 B.R. 769, 775 (Bankr. M.D. Pa. 2015).

[25] *Id* (internal citation omitted).

Every employer shall pay all wages, other than fringe benefits and wage supplements, due to his employees on regular paydays designated in advance by the employer.[26]

For the WPCL to apply, an employer-employee relationship is required.[27]  Moreover, it must be determined that the employee was paid a "wage" as that term is defined under the statute.[28]

The Superior Court of Pennsylvania is clear that the existence of an employer-employee relationship under the WPCL centers on whether the employer not only controls the result of the work but directs the manner in which the work is accomplished.[29]  By contrast, an independent contractor relationship is one in which the contractee "has exclusive control over the manner of performing it, being only responsible for the result."[30]

Given the existence of an employer-employee relationship, the employee must also be paid a "wage."[31]Section 260 of the WPCL defines wages as:

[A]ll earnings of an employe[e], regardless of whether determined on time, task, piece, commission or other method of calculation.[32]

The Superior Court of Pennsylvania considers compensation a "wage" for purposes of the WPCL when it is "offered to plaintiffs as employees, and not for some reason entirely unrelated

---

[26] 43 P.S. § 260.3.

[27] *Urbano v. Stat. Courier Inc.*, 878 A.2d 58, 61 (Pa. Super. 2005).

[28] 43 P.S. § 260.3.

[29] *Urbano,* 878 A.2d at 62.

[30] *Id* (internal citation omitted).

[31] 43 P.S. § 260.3.

[32] 43 P.S. § 260.2.

to their employment."[33] Here, the contract between the parties determines whether specific wages are earned.[34]

In this case, both the employer-employee relationship and the wage requirement are sufficiently alleged for purposes of the motion to dismiss.  First, the service agreement includes language that could support a finding that Gladstone controlled the manner in which Dahl accomplished his tasks.  For example, the portion of the agreement detailing Dahl's duties is entitled "discharge of duties as directed and approved by managing member."[35]  In addition, Dahl alleges that Defendant Kreuter "frequently interfered and frustrated the development process," and that "the development team worked to perfect the full integration version."[36]  In isolation, these allegations might be inconsequential.  But in combination, they allege that Dahl was required to not only report to someone at Gladstone before acting, but that the "someone" had to agree with his actions before they could take effect.

The wage requirement is also met. Section 6.1 of the service agreement states:

As compensation for the services rendered by Dahl hereunder, Dahl shall receive limited member units in Company (the "Units") equaling approximately (30%) percent of all of the outstanding Units in the Company.[37]

Hence, the service agreement explicitly states that Dahl's earnings were to be received in exchange for the services he was to provide pursuant to the agreement.  Dahl has alleged that he

---

[33] *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 956 (Pa. Super. 2011), *aff'd*, 106 A.3d 656 (Pa. 2014) (internal citation and quotation marks omitted).

[34] *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990).

[35] Case No. 15-3528, Pl's Ex. A.

[36] Compl. at ¶ 29.

[37] Case No. 15-3528, Pl's Ex. A.

8

performed those duties, which are listed in Schedule A of the agreement.  This sufficiently supports his claim that he was paid a wage as that term is defined under the statute.

   C.   Count III: Breach of Contract against Gladstone Technology

Dahl's third claim is for breach of contract.  Under Pennsylvania law, a claim for breach of a contract requires three elements: 1) the existence of a contract, including its material terms; 2) breach of a duty imposed by the contract; and 3) resultant damages.[38]  Every element must be specifically pled.[39]

Dahl has sufficiently pled all the elements of a breach of contract claim.  Specifically, he alleges that he had a service agreement with Gladstone and that Gladstone breached that agreement by failing to issue stock representing a 30% share and by failing to issue the lesser amount it did issue in a timely fashion.  Additionally, he alleges that he suffered damages as a result of the breach.  While there appears to be a dispute regarding the difference between being issued ***30% of all outstanding units*** in the company as the agreement states and being issued ***stock representing 30% of the company*** as Dahl states, the implications of that distinction are not properly resolved on a motion to dismiss.  Accordingly, the breach of contract claim may proceed to discovery.  On a fuller record, the Court may reevaluate the issue on summary judgment.

   D.   Count IV: Wrongful Termination in Violation of Washington Public Policy

The fourth cause of action asserts a violation of Washington public policy arising from Dahl's termination.[40]  To prevail on a such a claim, a Plaintiff must establish: "1) the existence

---

[38] *Johnson v. State Farm Life Ins. Co.*, 635 F.Supp. 2d 201, 212 (W.D. Pa. 2010).

[39] *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999).

[40] Washington has adopted an elemental test for wrongful discharge claims based on public policy. *See Gardner v. Loomis Armored, Inc.,* 128 Wash.2d 931, 941, 913 P.2d 377 (1996) (adopting these elements from Henry H. Perritt, Jr., Workplace Torts: Rights and Liabilities §§ 3.7, .14, .19, .21 (1991).

of a clear public policy (the clarity element); 2) that discouraging the conduct in which the plaintiff engaged would jeopardize the public policy (the jeopardy element); 3) that the public-policy-linked conduct caused the dismissal (the causation element); and 4) that the defendant is not able to offer an overriding justification for the dismissal (the absence of justification element)."[41]

Dahl alleges that he was terminated for his complaints about Gladstone's failure to issue him a 30% share in Gladstone Technology.  According to Dahl, this termination, predicated by his complaints to Defendants Lally and Kreuter, constitutes a violation of Washington public policy.  Nevertheless, Dahl's pleading does not clarify that policy.  Nor does he allege that the public policy-linked conduct caused his termination.  Accordingly, at least two of the elements necessary to sustain a claim for violation of public policy, the clarity and causation elements, are not met.  The claim will be dismissed, and leave is granted to file an amended complaint on this count.

E. Count V: Conversion

Next, Dahl asserts a claim for conversion. "Conversion is the deprivation of another's right of property in, or use or possession of, a chattel without the owner's consent and without lawful justification."[42] In Pennsylvania, intangible property is included among the types of property that can be converted.[43] However, the intangible property is limited to the kind that is

---

[41] *Becker v. Community Health Systems Inc.*, 182 Wash. App. 935, 942 (2014) (internal citations and quotation marks omitted).

[42] *Francis v. Needleman*, 705 A.2d 875, 878 (Pa. Super. 1997) (internal citations and quotation marks omitted).

[43] *Giordano v. Claudio*, 714 F.Supp. 2d 508, 524 (E.D. Pa. 2010).

"**_customarily merged in or identified_** with a particular document," such as deeds or stock certificates.[44]

Dahl alleges that Defendants Gladstone Technology, Kreuter, Lally, and Gladstone Associates interfered with his possession of stock when they informed him that the company was rescinding his shares.  Dahl further alleges that they had no legal justification to "rescind" or take back Plaintiff's stock at any time.  Accordingly, because the property at issue, the stock, is the kind of intangible property that is customarily merged in or identified with a particular document, the allegations are sufficient to state a claim for conversion against the Gladstone Defendants.  As with prior counts, discovery will be permitted on whether Kreuter and/or Lally have assumed individual liability for the alleged tortious conduct of the Gladstone defendants.

   F.  Count VII: Tortious Interference with Contract

Under Pennsylvania law, to prevail on a claim for tortious interference with existing or prospective contractual relationships, a party must prove: "1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; 2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relationship from occurring; 3) the absence of privilege or justification on the part of the defendant; 4) legal damage; and 5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference. [45]

Dahl does not allege all necessary elements of this cause of action.  Dahl states that Gladstone Associates, Daniel Kreuter, and Paul Lally intentionally interfered with the service

---

[44] *Id* (internal citations and quotation marks omitted).

[45] *Acumed LLC v. Advance Surgicial Serv*., 561 F.3d 199, 212 (3d Cir. 2009).

agreement between himself and Gladstone Technology by "among other acts and omission, refusing to issue the agreed-upon shares and rescinding those shares it did issue.  While Dahl alleges "absence of privilege or justification" with respect to the rescinding of shares under his conversion claim, he does not state the same allegation for the tortious interference with contract claim.  Moreover, he does not allege that Gladstone lacked privilege or justification for "refusing to issue the agreed on shares" or for the "other acts and commissions" he references in his Amended Complaint.  Accordingly, the claim fails as a matter of pleading.  The Court will, however, grant leave to replead on this count.

    G.  <u>Count VIII: Shareholder Oppression</u>

       The eighth cause of action is for shareholder oppression and a petition for judicial dissolution.  Pursuant to Pennsylvania's Limited Liability Company Act of 1994, statutory recourse available for disaffected shareholders.  Here, the company's certificate of organization is relevant.[46] If the certificate of organization states that the company is managed by "designated managers," Chapters 81, 83, and 85 (relating to limited partnerships) governs the parties' legal relationship.[47]  But if the certificate provides no information on whether the company is managed by "designated managers," the provisions of Chapters 81 (relating to general provisions) and 83 (relating to general partnerships) are controlling.[48]In both instances, however, LLC partners owe fiduciary duties to each other, including the duty of loyalty and the obligation to act for the benefit of other members of the partnership.  Furthermore, the statute enables both general and limited partners to petition the court for dissolution.

---

[46] *Health and Body Store, LLC, v. Justbrand Ltd*., 480 Fed.Appx. 136, 143 (3d Cir. 2012).

[47] *Id.*

[48] *Id.*

Here, Dahl alleges that "Gladstone Technology is, and at all relevant times hereto was, a Pennsylvania limited liability company" and that, by virtue of his ownership of Gladstone shares, he was a member of Gladstone.  However, the Amended Complaint and corresponding attachments do not provide information on Gladstone's certificate of organization or Gladstone's corporate structure.  Additionally, the Amended Complaint, while tangentially mentioning that Dahl served for a time as President of Gladstone, does not allege what, if any, management responsibilities he held in that capacity.  For this reason, the Court does not have the requisite information to determine if Dahl was a general or limited partner to which Gladstone would owe fiduciary duties.  Thus, the Court cannot determine if the requested remedy, judicial dissolution, which applies only to LLC partners, is properly pleaded.  Accordingly, the Court will dismiss this count and grant leave to amend.

H.  Count IX: Injunction for the Inspection of Books and Records

Dahl's ninth cause of action is entitled "Injunction for the Inspection of Books and Records.  Under Pennsylvania's Limited Liability Company Act, partners in an LLC have a statutory right to inspect partnership books.[49]  The relevant language provides:

> The partnership books shall be kept, subject to any agreement between the partners, at the principal place of business of the partnership, and every partner shall at all times have access to and may inspect and copy any of them.[50]

Here, Dahl claims that he requested access to all of Gladstone Technology's books and records pursuant to his rights under the contract, but was denied.  Nevertheless, as with the shareholder oppression claim, Dahl's complaint and corresponding attachment do not establish

---

[49] *Ignelzi v. Ogg, Cordes, Murphy and Ignelzi, LLP.*, 78 A.3d 1111, 1113 (Pa. Super. 2013).

[50] 15 Pa. C.S.A. § 8332.

that he was a Gladstone partner that would, by consequence, have a statutory right to inspect the company's books and records.  This count will be dismissed.

I.   Count X: Declaratory Relief against Gladstone Technology

Dahl's tenth cause of action is for declaratory judgment on two issues.  First, he seeks a declaration that the "term of the Agreement ended on October 1, 2014 but no later than April 1, 2015."[51]  Second, he challenges the forum selection clause contained within Section 14.2 of the agreement.  These issues will be addressed in order.

a)  Declaration Agreement ended on October 1, 2014 but no later than April 1, 2015

The grant or denial of relief for declaratory judgment is within the sound discretion of the court.[52]  In entertaining such relief, a court must determine whether an actual controversy exists within the meaning of the Declaratory Judgment Act.[53]"Although there is no precise definition as to what is or is not an "actual controversy," at the very least the facts averred must present a substantial controversy between adverse parties of sufficient immediacy and reality as to warrant a declaratory judgment."[54]

Here, Dahl seeks a declaration that the terms of the Service Agreement ended on October 1, 2014, but no later than April 1, 2015.  Even in consideration of each of Dahl's allegations herein, he is seeking relief in the nature of findings of fact that may or may not be viable after discovery is conducted and trial is adjudicated.  Such factual findings are appropriate, but left to the ultimate tribunal.  Dahl's request may well be important to proving his claims, but seeking declarative relief is not warranted.  This count will be dismissed.

---

[51] Compl. at ¶ 118.

[52] *Spivey Co. v. Travelers Ins.*, 707 F. Supp. 916, 917 (E.D. Pa 1976).

[53] *Id.*

[54] *Id.*

**b)  Unconscionability of the Forum Selection Clause**

Forum selection clauses are entitled to great weight and are presumptively valid.[55] Such clauses are enforced by the forum unless the party objecting to enforcement establishes that the clause resulted from fraud or overreaching, or that enforcement would, in the particular circumstances of the case, result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.[56]

Dahl does not allege that the forum selection clause was "procured via fraud or overreaching."[57] He also does not allege that a strong public policy would be violated or that litigating in Pennsylvania would be so seriously inconvenient as to be unreasonable.  He merely states that he resides and works in Pierce County, Washington and that a substantial part of the events or omissions giving rise to his claims occurred there.  He does not mention any adversity in litigating in Pennsylvania, and did not oppose Gladstone's motion to transfer venue.  Accordingly, the Court finds no basis to declare the selection clause unconscionable, and this count will be dismissed, with prejudice.

## IV.   CONCLUSION

For the reasons set forth herein, this Court will dismiss Dahl's complaint as to Count IV, Wrongful Termination in violation of Washington Public Policy; Count VII, Tortious Interference with Contract; Count VIII, Shareholder Oppression; Count IX, Injunction for Inspection of Books and Records; and Count X, Declaratory Judgement.  The Court will deny the motion to dismiss as to Count I, Washington state wage law (RCW §§ 49.48 and 49.52);

---

[55] *Foster v. Chesapeake Ins. Co., Ltd*., 933 F.2d 1207, 1219 (3d. Cir. 1991).

[56] *Id*.

[57]Compl. at ¶ 115-118.

Count II, violation of Pennsylvania's Wage Payment and Collection Law, (43 P.S. § 260.3);

Count III, Breach of Contract; and Count V, Conversion.  An appropriate order follows.